FILED
December 18, 2008
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0001567471

DAVID J. BROWN, ESQ. (SBN 56628)
MBV LAW LLP
855 Front Street
San Francisco, California 94111
Telephone: 415-781-4400
Facsimile: 415-989-5143

Attorneys for Defendant Great
Atlantic Capital Corporation, sued
erroneously herein as Great
Atlantic Credit Corporation

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| In re<br><br>BIG3D, INC. dba BIG3D.COM<br><br>Debtor.<br><br>BIG3D, INC.,<br><br>Plaintiff,<br><br>v.<br><br>GREAT ATLANTIC CREDIT CORPORATION,<br><br>Defendant. | Case No. 08-16768-B-11<br>Adversary Proceeding No. 08-01263<br>DC Nos. HAR-3, DJB-1<br><br>Chapter 11<br><br>**DEFENDANT'S OPPOSITION TO EX PARTE MOTION FOR PRELIMINARY INJUNCTION AND MOTION FOR RECONSIDERATION**<br><br>Date: December 18, 2008<br>Time: 2:30 p.m.<br>Dept.: Courtroom 12, 5th Floor<br>Judge: Hon. W. Richard Lee |

Great Atlantic Capital Corporation, sued erroneously in the adversary proceeding as Great Atlantic Credit Corporation, makes it response to BIG3D's pending motions as follows.

Defendant Great Atlantic Capital Corporation ("GACC") opposes the Debtor's motion for a preliminary injunction and motion for reconsideration. This written response by necessity has been hastily prepared because of the press of time to respond. For that reason, GACC reserves its rights to elaborate on the arguments made here and

raise new facts and argument at the hearing.

The plaintiff/debtor has virtually no valid factual support for many of the facts it asserts, and cites no legal authority that meaningfully supports its position. GACC has submitted evidentiary objections to Mr. Saville's Declaration.

What BIG3D really has done is rehash the arguments it made in response to GACC's motion to relief from stay, with one new "fact" added, to wit: it, the debtor, has filed an adversary proceeding attempting to put at issue the validity of the Voluntary Surrender Agreement and the nature of the Man Roland Press Lease document. The mere filing of a lawsuit that purports to tender those issues, with no real evidence to support its arguments, does not justify the issuance of a preliminary injunction.

The adversary proceeding on procedural grounds is not likely to be won on the merits by the debtor because the action should be dismissed under the "first filed doctrine" to allow the already pending action in New Jersey to proceed. More importantly, for the reasons stated below, the debtor has not demonstrated any meaningful likelihood to prevail on the merits of the case whether here or in New Jersey.

Additional problems the debtor has not overcome include:

- It fails to provide any authority that the express provisions of the Voluntary Surrender Agreement (VSA) are invalid or not operative.

- It fails to overcome New Jersey law (applicable by the provisions of the VSA and the underlying Lease) that gives validity to express provisions in the VSA giving possession and title to GACC, which express provisions are contrary to the claim by the debtor of a different prior oral agreement.

- It attempts by flatly wrong characterization to create an impression that the New Jersey action does not have the validity of the Voluntary Surrender Agreement as an issue in the case, and that it was part of the basis for the District Court's Order of Possession.

- It fails to provide meaningful, valid evidence to support its position.

///

# I. ARGUMENT (WITH FACTS INCLUDED AS NEEDED)

## A. The First Filed Doctrine Applies

Under the first filed doctrine, a second action involving the same issues as an earlier filed action is dismissed (or sometimes stayed or otherwise abated).

> The first-to-file rule was developed to 'serve[ ] the purpose of promoting efficiency well and should not be disregarded lightly.' It may be invoked 'when a complaint involving the same parties and issues has already been filed in another district.'

*Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 625 (9th Cir. 1991) (citations omitted).

> The 'first-filed' rule generally gives precedence to the first of two duplicative actions proceeding in different federal courts. 'Where identical actions are proceeding concurrently in two federal courts, entailing duplicative litigation and a waste of judicial resources, the first filed action is generally preferred in a choice-of-venue decision.'

*Cianbro Corp. v. Curran-Lavoie, Inc.*, 814 F.2d 7, 11 (1st Cir. 1987.)

The first-to-file doctrine seems particularly appropriate here in light of this Court's conclusion that the issues concerning the Voluntary Surrender Agreement and the Lease with respect to the Man Roland Equipment logically should be addressed in a non-bankruptcy law environment. Added to that conclusion is the obvious fact that both the Voluntary Surrender Agreement and the Equipment Lease have New Jersey choice of law provisions and the Voluntary Surrender Agreement has a New Jersey choice of forum provision.

The Voluntary Surrender Agreement provides at paragraph 5: "This Agreement shall be governed by and construed in accordance with the laws of the State of New Jersey .... All claims and disputes arising out or in connection with this Agreement shall be adjudicated in the Federal or State Courts of the State of New Jersey." (Complaint in this Adversary Proceeding, Ex. A.) At paragraph 13 the Equipment Lease provides that "[t]his Lease shall be governed by and construed in accordance with the laws of the State of New Jersey." (*Id.* at Ex. B.)

///

### 1. The New Jersey Action Involves the Same Parties and Does Raise the Same Substantive Issues Raised in the Debtor's Adversary Proceeding

Ignoring the fact that the debtor got GACC's name wrong in its adversary proceeding, the parties in the adversary proceeding and the New Jersey Action are the same.[1]

The First Count of the Verified Complaint in the New Jersey case relies on the Voluntary Surrender Agreement with its provisions saying that (1) Big3D will "immediately surrender possession of the Equipment to [GACC] and provide such reasonable and necessary access therefore to [GACC] or its designee" and (2) "BIG3D hereby transfers and assigns to [GACC] all of its right, title and interest in the Equipment effective the date hereof."[2] Hence, the Voluntary Surrender Agreement and its validity and effectiveness is directly at issue in the New Jersey case.

The Third Count of the Verified Complaint seeks damages on the equipment with respect to the Lease obligation of Big3D regarding the Man Roland Printing Press.[3] This count puts the Man Roland Lease at issue in the New Jersey case.

### 2. The Verified Complaint was filed October 16, 2008; the Adversary Proceeding Here Was Filed December 16, 2008

#### a. The Adversary Proceeding Should Be Dismissed or Abated — It Has No Chance for Success on the Merits

This Court concluded that the automatic stay should be lifted to allow the parties to resolve the underlying issues concerning the meaning and effect of the Voluntary Surrender Agreement and the Lease in a non-bankruptcy forum, particularly because

---

[1] (Declaration of Wayne D. Greenfeder, Esq. in Support of Great Atlantic Capital Corporation's Motion for Relief from the Automatic Stay, Docket item 26 ["Greenfeder Decl."], Ex. A (a copy of the Verified Complaint naming GACC as the plaintiff and the Debtor as the defendant).)

[2] (Greenfeder Decl., Ex. A [Verified Complaint at 2-4].)

[3] (Greenfeder Decl., Ex. A [Verified Complaint at 7-10].)

until those issues were resolved, confirmation of any plan would be impossible. Reinstating a stay (in the form of a 105(a) injunction) is not justified. That the debtor has now belatedly brought an adversary proceeding to tender those issues together with some forum shopping, does not change the dynamic on which this Court chose to lift the automatic stay.

**B. The Debtor's Argument That the New Jersey Court Did Not Have the Voluntary Surrender Agreement Before It Is Plainly Wrong**

The facts above show the Voluntary Surrender Agreement was before the New Jersey District Court. Big3D's claim that the District Court in New Jersey did not address the Voluntary Surrender Agreement whatsoever is hokum. The District Court's Order of Possession recites "the Court having considered the papers filed and the argument of counsel, and for good cause shown . . . ." GACC's argument for the Order of Possession stressed the Voluntary Surrender Agreement, with more than 2/3 of the argument being centered on the Voluntary Surrender Agreement.[4]

**C. The Debtor's Conclusion That It Has Shown a Strong Case for Success on the Merits Has No Soundness — the Case It Tries to Make Has Many Flaws and Inadequacies**

**1. The Debtor's Attempt to Derail the Voluntary Surrender Agreement As Being Not the True Agreement Flies in the Face of the Contract Provisions and the Law**

The Voluntary Surrender Agreement has several express provisions that make the Debtor's claim that it had an unstated condition precedent not a sound argument. First, the express provisions that give GACC the right to immediate possession and convey all of the debtor's right, title and interest in the Man Roland Press to GACC[5] are directly

---

[4] The Greenfeder Declaration in its Exhibit A contains a copy of the GACC brief seeking the order of possession.

[5] (*See* Voluntary Surrender Agreement [Complaint, Ex. A] ¶¶ 1, 2 and 5.) "1. BIG3D shall immediately surrender possession of the Equipment to [GACC] . . . ." "2. BIG3D hereby transfers and assigns to [GACC] all of its right, title and interest in the Equipment effective the date [August 14, 2008] hereof." "5. * * * This Agreement

inconsistent with the purported additional oral agreement[6] to the contrary allegedly made prior[7] to the execution of the Voluntary Surrender Agreement.

New Jersey law, applicable to the Voluntary Surrender Agreement and the underlying capital leases, looks to the document to see if it is fully integrated, and, if it is, upholds that against outside attacks. *See Flavorland Industries, Inc. v. Schnoll Packing Corp.*, 167 N.J. Super. 376, 381; 400 A.2d 883 (N.J. Dist.Ct.1979) (copy attached as Exhibit 1 to GACC's Motion for Relief from Automatic Stay). Additionally, New Jersey law recognizes that requirements for written modifications are valid contractual provisions. *See, e.g., Family Kingdom, Inc. v. EMIF New Jersey Limited Partnership (In re Family Kingdom, Inc.)*, 225 B.R. 65 (Bankr. D.N.J. 1998), which recites in relevant part:

> Family Kingdom's final position on appeal is that discovery would provide evidence that the Lease was modified by the parties. The argument appears to be that modification of a contract may occur without the mutual assent of the parties and may be implied from the conduct of the parties, and that an oral modification can override a contractual provision prohibiting oral modifications. *See* Family Kingdom's Appeal Brief at 17-18. Family Kingdom is not likely to succeed on this claim on appeal.
>
> First, the Lease provided that:
>
> This Lease may be modified, amended, discharged or waived only by an agreement in writing signed by the

constitutes the complete and entire understanding between the parties on this subject matter. No other promises or agreements shall be binding unless in writing and signed by all parties hereto."

---

[6] At Mr. Saville's deposition he testified: "Q Are you aware of any writings where Mr. Wallace expressed that the execution of the involuntary surrender agreement and its terms were just a formality of which you have – which are the kind that you just described to me? A No." (Saville Depo. at 53:6-11; Declaration of David J. Brown ["Brown Decl."] ¶ 2, Ex. 1.)

[7] At Mr. Saville's deposition he testified: "Q And this expressed an agreement, you just referenced in your last answer, between John and you with respect to having formality so he could show the document? There was an agreement reached prior to the time you signed the voluntary surrender agreement? A There were multiple telephone conversations confirming that and leading up to signing of the document, yes." (Saville Depo. at 56: 10-18; Brown Decl. ¶ 2, Ex. 1.)

> party against whom enforcement of any such modification, amendment, discharge or waiver is sought.

Lease at § 32(f). Furthermore, in discussing remedies and damages upon default, the Lease provided that:

> No failure of [EMIF] (i) to insist at any time upon the strict performance of any provision of this Lease or (ii) to exercise any option, right, power or remedy contained in this Lease shall be construed as a waiver, modification, or relinquishment thereof. A receipt by [EMIF] of any sum in satisfaction of any Monetary Obligation with knowledge of the breach of any provision hereof shall not be deemed a waiver of such breach, and no waiver by [EMIF] of any provision hereof shall be deemed to have been made unless expressed in a writing signed by [EMIF].

*Id.* at § 23(g). **Accordingly, in light of these provisions, Family Kingdom could not have reasonably expected that any modification which was not in the form of a writing signed by EMIF would have any effect.**

*Id.* at 74 (emphasis added).

Additionally, New Jersey applies the parol evidence rule to disallow prior inconsistent language not included in a fully integrated final document. *Ocean Cape Hotel Corp. v. Masefield*, 63 N.J. Super. 369, 378, 184 A.2d 607 (App. Div.1960).

### 2. Big3D's Behavior Is Consistent with the Meaning of the Voluntary Surrender Agreement as Written that Big3D Had Conveyed Away All the Rights, Title and Interest It Had in the Man Roland Press

After the Voluntary Surrender Agreement was made, Big3D and GACC discussed various alternatives that Big3D might explore to obtain a replacement press for the Man Roland press. During those discussions, Mr. Saville suggested that Big3D might be able to start making some payments on a press. Mr. Wallace responded by saying "how about paying $15,000 per month for the press starting on 9/15 while we work through this."

The next day Mr. Wallace further elaborated his view of the situation when he said via email to Mr. Saville:

> Following up on my email of yesterday, this will confirm that any modification of the financing transactions or Voluntary Surrender Agreement must be confirmed in writing signed by Big 3D and GACC.

This will also confirm that the below reference to monthly payments is without prejudice and the suggestion is subject to entering into a signed agreement that would, among other things, set forth the details of the proposal and preserve GACC's right to remove the equipment per the VSA.

Tellingly, Mr. Saville responded by email in a manner that confirms he knew that, absent some change in the existing agreement, Big3D did not have rights in the Man Roland press at that time. What Mr. Saville said was: "I would think that starting to make payments would **give us** rights toward the press or its replacement." (Emphasis added.)

Mr. Wallace again responded by again pointing out that any change in the Voluntary Surrender Agreement deal required a signed writing by all parties. Certainly when Mr. Wallace was telling Mr. Saville that a signed writing was required to change the Voluntary Surrender Agreement, Mr. Saville did not respond by challenging the validity of the Voluntary Surrender Agreement. Mr. Saville never communicated that, or protested that, the Voluntary Surrender Agreement did not mean what it said. (The chain of emails from which the above quotations are lifted can be found in the Declaration of John Wallace in Support of Defendant's Opposition to Ex Parte Motion for Preliminary Injunction ["Wallace Decl."] ¶ 2, Ex. A.)

### 3. Thomas Saville Signed the Voluntary Surrender Agreement After Consultation with Counsel and Multiple Readings of the Document

Before signing the Voluntary surrender Agreement, Mr. Saville reviewed it with his Counsel, Mr. Ryder. Mr. Saville's testimony is clear on this point.

> Q Okay. Did you read the voluntary surrender agreement before you signed it?
>
> A I did.
>
> Q More than once?
>
> A Yes.
>
> Q If you turn to paragraph six on the second page of the voluntary surrender agreement you'll see that about – I'm going to start about halfway through the sentence. The sentence begins "Each party hereto represents that it has carefully read," but I want to go to the part that says

that "each party has had an opportunity to discuss the terms, conditions and provisions with legal counsel prior to the execution hereof." Now, in answering my next question I don't want to hear from you any discussions you may have had with counsel about the voluntary surrender agreement at or before the time you signed it, but I just want to know if you had any discussions with counsel before you signed —with your counsel before you signed the voluntary surrender agreement concerning the voluntary surrender agreement?

A Yes.

Q And, again, without telling me any content of those discussions with counsel, did you have those discussions —with which counsel did you have those discussions?

A Hilton Ryder.

Q Any other counsel in addition to Mr. Ryder?

A No.

Q And at the time was the capacity in which you had the discussions with Mr. Ryder that of him being counsel to BIG3D as opposed to you individually? And it may be both, you tell me.

A I am not able – sure where that line is.

Q Well, let me ask you this: Was it at least as counsel to BIG3D and possibly as counsel to you as well?

A Yes.[8]

GACC finds it hard to believe that Mr. Ryder would have permitted Mr. Saville to execute the Voluntary Surrender Agreement if he knew that it did not reflect the actual agreement between the parties but only existed so, according to Mr. Saville, Mr. Wallace could show it to potential buyers of equipment to prove up title he did not really yet have.

4. **The Doctrine of Estoppel by Contract Binds BIG3D to the Factual Recital in the Voluntary Surrender Agreement that the Voluntary Surrender Agreement Constituted the Complete and Entire Understanding between the Parties on the Subject Matter of the Agreement**

The Voluntary Surrender Agreement recites as fact in paragraph 5 that: "This

---

[8] (Saville Depo. at 47:11-49:1; Brown Decl. ¶ 4, Ex. 3.)

Agreement constitutes the complete and entire understanding between the parties on this subject matter." Bid3D is bound by that fact.

The concept of estoppel by contract should apply here and bind Big3D to the factual statements in Voluntary Surrender Agreement noted above. Statements of the principle involved can be found many places. *See, e.g.*, Cal. Evid. C. § 622 (a codification of the principle — "[t]he facts recited in a written instrument are conclusively presumed to be true as between the parties thereto, or their successors in interest; but this rule does not apply to the recital of a consideration"); *Aluminum Company of America v. Essex Group, Inc.*, 499 F. Supp. 53, 84-85 (W.D. Pa. 1980) (estoppel by contract only requires recital of fact in a contract).

### D. Bankruptcy Law Says That When Neither the Debtor Nor the Estate of the Debtor Has Any Interest whatsoever in the Property, That Fact Alone Constitutes Sufficient Cause to Eliminate the Automatic Stay

> Prepetition loss of an ownership interest in property constitutes cause for relief from stay. Where the debtor (or the estate) no longer has any right to the property, there is no reason not to allow the creditor to repossess because filing a bankruptcy petition after loss of ownership cannot reinstate the debtors title [See 11 USC § 541(a)—only "legal or equitable interests of the debtor in property as of the commencement of the case" become property of the estate].

March, Ahart & Tchaikovsky, CAL. PRAC. GUIDE: BANKRUPTCY (The Rutter Group 2007 (as updated) § 8:1195; *see In re Boyd*, 107 B.R. 541, 542-43 (Bankr. N.D.Miss. 1989) (debtor who filed a bankruptcy petition after foreclosure was completed had no legal right to property involved).

> Section 362(a) only stays actions against the debtor, property of the debtor or property of the bankruptcy estate. The stay does not apply to property in which the debtor's interest was completely extinguished before the case was filed. * * * For example, if title to certain property passed from the debtor to a creditor prepetition . . . , the debtor has no interest in the property on the petition date and the property does not become property of the estate.

CAL. PRAC. GUIDE: BANKRUPTCY at § 8:790.

With Big3D not being able to show much of a chance on the merits of its case, and with the District Court in New Jersey having already ordered that the Man Roland Press

should go to GACC, no justification exists for a preliminary injunction to prevent GACC from obtaining the press.

## II. <u>CONCLUSION</u>

For all the reasons given here and in the papers accompanying this opposition, both the motion for reconsideration and the motion for a preliminary injunction should be denied. From GACC's perspective these motions comprise additional stalling tactics on the part of Big3D with an attempt to gussy them up by having very belatedly filed an adversary proceeding seeking resolution of what is already at issue in New Jersey.

Dated: December 18, 2008.

Respectfully submitted,

MBV LAW LLP


By      <u>s/David J. Brown</u>
          David J. Brown
Attorneys for Defendant Great Atlantic Capital Corporation