Hilton A. Ryder, # 54470
McCormick, Barstow, Sheppard
Wayte & Carruth LLP
P.O. Box 28912
5 River Park Place East
Fresno, CA 93720-1501
Telephone: (559) 433-1300
Facsimile: (559) 433-2300

Attorneys for Big3D, Inc.

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA
### Fresno Division

| | |
|---|---|
| In Re<br>BIG3D, INC.,<br>        Debtor. | Case No. 08-16768-B-11<br>Chapter Number: 11 |
| BIG3D, INC.,<br>        Plaintiff,<br>v.<br>Great Atlantic Capital Corporation,<br>        Defendant. | Adversary Proceeding No. 08-01263-B |

## SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF

Big3D.com, Inc., Debtor-in-Possession ("Plaintiff"), alleges as follows:

Big3D.com, Inc. filed a voluntary Chapter 11 case in the Eastern District of California on October 23, 2008, and has continued as debtor-in-possession.

Great Atlantic Capital Corporation ("Defendant") is a corporation formed under the laws of the State of New Jersey.

///

///

## GENERAL FACTUAL STATEMENT

1. Plaintiff is a California corporation that specializes in printing on plastic which is a series of lenses that create a three dimensional print. The company ran successfully at a profit until 2006 when a decision was made to begin manufacturing drink cups out of a three dimensional print. Big3D had a verbal commitment to make cups for a movie promotion and contacted companies such as McDonalds and Pepsi that showed an interest. John Wallace of Great Atlantic Credit Corporation liked the idea and agreed to finance the equipment necessary to develop the cup manufacturing business.

2. Plaintiff entered into a financing arrangement with Defendant to finance a Man-Roland printing press ("Press") in November 2006 and other equipment necessary to manufacture cups. The Press was installed in March 2007 and became the primary Press for the entire printing business. It is the Press that is the subject of this Adversary Proceeding.

3. Unfortunately the movie that was to provide the initial large order has not yet been produced because of the screenwriters strike. McDonalds and Pepsi evaluated the project but did not place any orders. The initial start up was completed and Plaintiff began printing the cups. John Wallace was kept informed of the progress and allowed the continued use of the Press without monthly payments with the common hope that there would be a large cup order. Without the cup order, the corporation was unable to make the required payments on the approximately $3,600,000.00 in equipment purchased for the cup project. John Wallace was aware of this when the initial equipment was purchased. He went along with the cup project and did nothing to declare a default from November 2006 through January 2008.

4. In May 2008, both John Wallace and Tom Saville, the president of Plaintiff, began to look for buyers for the cup machine. John Wallace started trying to find a buyer for the Man-Roland press and began asking for payments and for the surrender of the Press. John Wallace located a used 40 inch press for $750,000.00 installed in Fresno and agreed to finance the purchase of the used press to allow his sale of the Man-Roland press for the sum of $1,500,000.00, thereby reducing his risk.

///

5. On August 20, 2008, Plaintiff and Defendant executed an agreement entitled "Surrender Agreement" attached hereto as Exhibit A. The Surrender Agreement was an accommodation to John Wallace to allow him to show good title to a buyer without the necessity of a Uniform Commercial foreclosure and was not intended to convey anything at the time of execution. The Man-Roland press would not be surrendered until the 40 inch replacement press was in place.

6. John Wallace found a buyer for the Man-Roland press and ask permission to remove it. When Plaintiff refused to do so, Defendant filed a complaint in the Federal District Court in New Jersey to foreclose under the original November 2006 agreement seeking a deficiency and a writ of possession.

7. Plaintiff did not appear in the New Jersey action and the court issued a writ of possession on the same day that the above captioned Chapter 11 case was filed. There was no determination of the validity or effect of the Surrender Agreement by the District Court, nor was the District Court ever asked to determine the validity or effect of the Surrender Agreement.

8. The November 2006 agreement is entitled "Lease Agreement" but includes an option to purchase the Press for the sum of $500.00 at the end of the term. The agreement is therefore a disguised security agreement and not a true lease. The agreement is attached hereto as Exhibit B. The purchase option is attached hereto as Exhibit C.

## FIRST CAUSE OF ACTION

### (Declaratory Relief)

9. Plaintiff incorporates by reference paragraphs 1 through 8 above.

10. An actual controversy has arisen between Plaintiff and Defendant regarding the true nature of the November 2006 agreement. It is the position of Plaintiff that the agreement is a disguised security agreement that grants a security interest in the Man-Roland press securing the purchase price which obligation can be modified under a plan of reorganization. It is the position of Defendant that the agreement is a true lease that cannot be modified under a plan of reorganization.

///

McCORMICK, BARSTOW, SHEPPARD, WAYTE & CARRUTH LLP
5 RIVER PARK PLACE EAST
FRESNO, CA 93720-1501

11. A second dispute exists between Plaintiff and Defendant regarding the enforceability and effect of the Surrender Agreement. It is the position of Plaintiff that the document was an accommodation to John Wallace to allow him to negotiate with prospective buyers without having to disclose that he had to first acquire the Man Roland press through a Uniform Commercial Code foreclosure process before being able to convey title to a buyer. There was never an agreement to surrender the Press until a replacement press was in place. The position of Defendant is that Plaintiff has no right title or interest in the Press as a result of the Surrender Agreement.

12. Plaintiff desires a judicial determination of its rights and duties with respect to Defendant.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to the general grant of jurisdiction of 28 U.S.C. § 1334. The matter is a core proceeding as defined by 28 U.S.C. § 157(b)(2). Procedure is provided by B.R. 7004 et. seq. Relief is requested pursuant to 11 U.S.C. § 105 and B.R. 9023 and 9024.

**WHEREFORE**, Plaintiff prays that this Court

1. Determine the Lease Agreement is a disguised security agreement creating a security interest in the Man-Roland press and not true lease;

2. That the Surrender Agreement is not an enforceable agreement.

Dated: January 7, 2009.

MCCORMICK, BARSTOW, SHEPPARD, WAYTE & CARRUTH LLP

By: _____
Hilton A. Ryder
Attorneys for Big3D, Inc.

09477/00011-1342699.v1

4

EXHIBIT "A" Page 1 of 3

## VOLUNTARY SURRENDER AGREEMENT

Agreement dated as of August 14, 2008, by and between Great Atlantic Capital Corporation located at 11 Hackensack Avenue, Hackensack, New Jersey 07601 (the "Company"); and BIG3D, located at 1419 M. Street, Fresno, California 93721, ("BIG3D").

### WITNESSETH:

WHEREAS, on or about September 23, 2006, the Company and BIG3D entered into a lease (the "PMC Lease") pursuant to which the Company agreed to lease to BIG3D one (1) new Paper Machinery Corporation PMC-1250MP machine, S/N PMC 12SMPP4837 including a LS-251 Counter Stacker, 2 sets of tools and height change tools and related mechanical and electrical spare parts (the "PMC Equipment");

WHEREAS, on or about November 7, 2006 the Company and BIG3D entered into a lease (the "Man Roland Lease") pursuant to which the Company agreed to lease to BIG3D one (1) new Man Roland 500 Series High Speed Six (6) Color LV 6/0 Sheetfed Offset Printing Press with Coater, S/N 31774B; One (1) new Air Motion systems UV combination System consisting of 6 interchangeable UV interstations each with 400 W/inch specific UV power, 2 interchangeable UV end of press modules each with 400 W/inch specific UV power, 1 water refrigeration unit (Chiller) with remote condenser, PC based control running with color touch screen operator interface, Cool Impressions system for heat sensitive substrates (the "Man Roland Equipment");

WHEREAS, BIG3D is in default under the PMC Lease, and the Man Roland Lease (collectively the "Leases"); and

WHEREAS, BIG3D is in possession of the PMC Equipment, and the Man Roland Equipment (collectively the "Equipment") all of which are located at 1419 M. Street, Fresno, California 93721.

NOW, THEREFORE, in consideration of the premises, mutual promises, covenants, terms and conditions herein, which are expressly incorporated herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree follows:

1. BIG3D shall immediately surrender possession of the Equipment to the Company and provide such reasonable and necessary access therefore to the Company or its designee.

2. BIG3D hereby transfers and assigns to the Company all of its right, title and interest in the Equipment effective the date hereof.

3. Effective the date hereof, BIG3D consents to and authorizes the Company to dispose of the Equipment in accordance with applicable law. In the event the proceeds so realized are less than the amounts due under the Leases, BIG3D agrees that it shall remain liable to the Company for the deficiency.

4. With the exception of the obligations of the Company set forth in this Agreement, BIG3D hereby releases the Company from any and all liabilities, claims, obligations and/or damages ("Claims") including, but not limited to, any Claims arising out of and/or related to the Leases, the surrender, release, repossession, taking, sale, lease or disposition of the Equipment. Any damage caused to other property (real or personal) due to negligence during the removal is not included in this release.



EXHIBIT 1

5. This Agreement shall be governed by and construed in accordance with the laws of the State of New Jersey and shall be binding on and inure to the benefit of the parties and their successors and assigns. All claims and disputes arising out or in connection with this Agreement shall be adjudicated in the Federal or State Courts of the State of New Jersey. This Agreement may be executed in counterparts, each of which, when executed, shall be an original, and all of which together shall constitute one and the same agreement. Any signature page delivered electronically or by a fax machine shall be binding to the same extent as an original signature page, with regard to any agreement subject to the terms hereof or any amendment thereto. This Agreement constitutes the complete and entire understanding between the parties on this subject matter. No other promises or agreements shall be binding unless in writing and signed by all parties hereto. The recitals in this Agreement are expressly incorporated and made a part hereof.

6. Each party hereto acknowledges that it is executing this Agreement as its own voluntary act and deed, and represents that such execution was not the result of any duress, coercion, or undue influence upon any of them. Each party hereto represents that it has carefully read and fully understands the terms, conditions, meaning, and intent of this Agreement, and that each party has had an opportunity to discuss the terms, conditions, and provisions with legal counsel prior to the execution hereof. This Agreement shall be construed in accordance with its plain meaning and not against either party as the drafting party.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

ATTEST:

GREAT ATLANTIC CAPITAL CORPORATION

By: [signature]

ATTEST:

BIG3D

By: [signature] THOMAS SAVILLE

EXHIBIT "B" Page 1 of 3

No. 998

# EQUIPMENT LEASE

LEASE made as of the 7 day of November, 2006 between GREAT ATLANTIC CAPITAL CORPORATION (the "Lessor") a New Jersey corporation having its principal place of business at 411 Hackensack Avenue, Hackensack, New Jersey 07601 and BIG3D, a Corporation under the laws of the State of California having its principal place of business 1419 M Street, Fresno, California 93721 (the "Lessee")

1. **LEASE OF EQUIPMENT:** Lessor leases to Lessee and Lessee hires and takes from Lessor the following described personal property together with all attachments, replacements, parts, substitutions, additions, repairs, accessions and accessories incorporated therein and/or affixed thereto, and proceeds (hereafter referred to as the "Equipment").

### DESCRIPTION OF EQUIPMENT
*(include make, year and model and serial numbers)*

One (1) new Man Roland 500 Series High Speed Six (6) Color LV 6/0 Sheetfed Offset Printing Press with Coater, S/N 31774B  ; One (1) new Air Motion Systems UV Combination System consisting of 6 interchangeable UV interstations each with 400 W/inch specific UV power, 2 interchangeable UV end of press modules each with 400 W/inch specific UV power, 1 water refrigeration unit (Chiller) with remote condenser, PC based control running with color touch screen operator interface, Cool Impressions system for heat sensitive substrates;

2. **TERM AND RENTALS:** The term of this Lease shall be 96 months from the date the Equipment is delivered and first commercial run is complete to Lessee and shall be for a total rental of $2,739,936.00 of which $28,541.00 is herewith paid in advance and the balance of the rental, $2,711,395.00, is payable in 95 successive monthly installments commencing on the 20th day of April 2007 and continuing on the same date of each month until paid in full. The first 95 installments shall each be in the amount of $28,541.00 followed by none.

Rentals shall be paid at the office of Lessor as set forth above or at such other place as Lessor or its assigns may from time to time designate.

3. **USE AND LOCATION OF EQUIPMENT:** Lessee warrants and agrees that the Equipment will be used only for business or commercial purposes; that regardless of the manner of affixation, the Equipment will remain personal property and not become a part of the real estate; that the Equipment will at all times be kept at 1419 M Street, Fresno, California 93721 and Lessee will secure the written agreement of the landlord of the premises and of the mortgagee, if any, that the Equipment shall remain personal property, removable by Lessor.

4. **NO WARRANTY:** Lessee acknowledges that the Equipment has been selected solely by it; that Lessor is not the manufacturer or vendor of the Equipment or an agent of the manufacturer or vendor; that Lessee has authorized and directed Lessor to purchase the Equipment from the manufacturer or vendor and Lessee looks solely to the manufacturer or vendor for delivery and installation of the Equipment. LESSOR NEITHER MAKES NOR SHALL BE DEEMED TO HAVE MADE ANY WARRANTY OR REPRESENTATION EXPRESS OR IMPLIED CONCERNING THE EQUIPMENT, INCLUDING, WITHOUT LIMITATION, ANY WARRANTY OR REPRESENTATION AS TO ITS DESIGN, QUALITY, CAPABILITY OR CONDITION OR AS TO ITS MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE. Lessor will assign to Lessee, to the extent assignable, any warranties of the manufacturer or vendor, provided that Lessee is not in default hereunder, any recoveries are used to repair or replace defective Equipment and any action by Lessee shall be at its sole cost and expense.

5. **RISK OF LOSS:** Risk of loss of, damage to, or destruction of the Equipment shall be on Lessee. Lessee shall promptly notify Lessor in writing of any loss, theft, damage or destruction of the Equipment. In case of damage to the Equipment (unless the same is damaged beyond repair) Lessee shall, at its expense, place the same in good repair, condition and working order. If the Equipment is determined by Lessor to be lost, stolen, destroyed or damaged beyond repair, Lessee shall immediately pay Lessor an amount equal to the sum Of (i) all unpaid rent due and to become due under this Lease plus (ii) the purchase price pursuant to any agreement by Lessee to purchase, which sum shall be discounted to present value at the rate of five percent (5%) per annum; less the net amount of the recovery, if any, actually received by Lessor from insurance or otherwise for such loss, damage, theft or destruction.

6. **INSURANCE:** Lessee shall, at its expense, procure and maintain throughout the term of this Lease (a) personal injury and property damage liability insurance with respect to the Equipment and its use in such amounts as Lessor requires, naming Lessor as additional insured, and (b) insurance covering the Equipment against all risks of physical loss, theft, damage and destruction and extended coverage in an amount not less than the greater of the aggregate amount of unpaid total rent or the full replacement value (new) of the Equipment, with loss payable to Lessor. All insurers and coverages shall be satisfactory to Lessor. Lessee shall deposit said policies or duplicates or certificates thereof with Lessor and said policies shall provide that same may not be cancelled or altered without at least thirty (30) days prior written notice to Lessor. Lessor may apply the proceeds of said insurance to replace or repair the Equipment and/or to satisfy Lessee's obligations hereunder. Any such application of proceeds shall be applied against Lessee's rental obligations in inverse order of maturity. If Lessee fails to procure such insurance or pay when due any insurance premium for any policy, Lessor may (but shall not be required to) procure such insurance and/or make such payments and the costs thereof shall be deemed additional rent and paid by Lessee to Lessor with the next rental payment. All insurance policies insuring against risk of physical loss of the Equipment shall provide that the coverages shall not be invalidated against Lessor or its assignees because of any violation of any condition or warranty contained in any policy or application therefore by Lessee or by reason of any act of the Lessee.

THE UNDERSIGNED AGREE TO ALL THE TERMS AND CONDITIONS SET FORTH ABOVE AND ON THE REVERSE SIDE HEREOF AND IN WITNESS WHEREOF, THEY HEREBY EXECUTE THIS LEASE.

Accepted at Lessor's Office at Hackensack, New Jersey

GREAT ATLANTIC CAPITAL CORPORATION

By: _____

Title: _____

BIG3D

Lessee: _Big3D_
Name of individual, corporation or partnership

By: _Thomas K Saville_

Title: _President_

EXHIBIT 2

7. **NET LEASE:** This Lease is an irrevocable net lease for the full term. Lessee's obligation to pay rent and other amounts payable hereunder is absolute and unconditional and shall not be affected by any circumstance including, without limitation, (i) any setoff, counterclaim, recoupment, defense or other right Lessee has against Lessor or (ii) any defect in, failure of delivery, loss or destruction of, or damage to the Equipment or interruption or cessation in the use or possession thereof.

8. **LESSEE'S REPRESENTATIONS, WARRANTIES AND COVENANTS:** Lessee represents, warrants, and covenants that: Lessee has full authority and legal right to execute, deliver and perform this Lease and such action as been duly authorized by Lessee; Lessee will notify Lessor in writing of any change in its name or address within 10 days of such change; any financial information furnished to Lessor by or on behalf of Lessee is complete and correct; Lessee will service, repair and maintain the Equipment in good condition, normal wear and tear excepted; Lessee will cause the Equipment to be operated in accordance with the manufacturer's and supplier's instructions and manuals, by competent and qualified personnel and in compliance with all governmental and insurance requirements; Lessee will obtain and maintain all necessary licenses and permits; Lessee will pay and indemnify Lessor for, and hold Lessor harmless from and against, all income, withholdings, fees, taxes and other governmental charges of any nature, together with any penalties or interest thereon, arising out of the transactions contemplated by this Lease and imposed against Lessee; the Equipment or this Lease by any Federal, State or local government or taxing authority upon or with respect to the Equipment or the purchase, ownership, delivery, leasing, possession, use, operation, sale, return or other disposition thereof, or upon or with respect to the rentals, receipts or earnings arising from the Equipment, or upon or with respect to this Lease (excluding, however, taxes on or measured solely by the net income of Lessor); Lessee will not transfer or assign this Lease, or move, transfer, sublet or otherwise dispose of the Equipment, or permit the Equipment to be used by anyone other than Lessee, or make any material addition to or change in the Equipment, without Lessor's prior written consent; if requested by Lessor, Lessee shall at Lessee's expense, attach to and maintain on the Equipment a conspicuous plate or marking disclosing Lessor's ownership interest in the Equipment; Lessee will indemnify and hold Lessor harmless from and against all losses, damages, injuries, liabilities, claims and expenses in any way resulting from, relating to, or arising out of the manufacture, purchase, acceptance, ownership, leasing, delivery, condition, use, operation, control, sale, return or other disposition of the Equipment or any part thereof, including latent or other defects, whether or not discoverable, tort claims (including claims for strict liability in tort) or claims for patent, trademark, copyright infringement or trade secrets. Lessee will execute and deliver such other statements and documents required by any taxing authority or requested by Lessor to protect Lessor's rights in the Equipment or in connection with this Lease or any related document, including, without limitation, financing statements under the Uniform Commercial Code. Lessee, as debtor, grants a security interest to Lessor, as secured party, in any right, title and interest which Lessee now or may hereinafter have in the Equipment. This grant of a security interest shall not affect adversely the interpretation of this agreement as a true Lease. Lessee hereby constitutes and appoints Lessor its true and lawful attorney-in-fact to execute and deliver any financing statement or other document which may be required to establish and/or maintain Lessor's security interest in the Equipment and/or the additional collateral security covered by the provisions of paragraph 11 below. Lessee will pay, or on demand reimburse Lessor for, Lessor's out-of-pocket expenses in connection with the filing of financing statements, continuations, and the costs of searches against Lessee or related parties.

9. **OWNERSHIP AND RETURN OF EQUIPMENT:** Title to the Equipment shall at all times remain in Lessor and Lessee shall, at its own cost and expense, protect and defend Lessor's title. Upon the expiration or other termination of this Lease, Lessee shall surrender and return possession of the Equipment to Lessor unencumbered and in good order and repair, ordinary wear and tear excepted. Equipment returned to Lessor shall be properly prepared for shipment by common carrier by the Lessee, at Lessee's expense, and shall be shipped with insurance and freight prepaid to the point designated by Lessor.

10. **DEFAULT:** An event of default shall occur if: (a) Lessee fails to pay when due any installment of rent or other sum due hereunder; (b) Lessee fails to maintain in force the required insurance or removes, sells, transfers, encumbers, sublets or parts with possession of the equipment or any part thereof, or attempts to do any of the foregoing; (c) Lessee fails to perform or observe any other covenant, condition or obligation to be performed or observed by it hereunder or under any other lease, note, security agreement, other agreement or guaranty now or hereafter existing between the parties and such failure continues uncured for 5 days after written notice thereof to Lessee by Lessor; (d) Lessee ceases doing business as a going concern, makes an assignment for the benefit of creditors, admits in writing its inability to pay its debts as they become due, files a voluntary petition in bankruptcy, is adjudicated to a bankrupt or an insolvent, files a petition seeking for itself any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar arrangement under any present or future statute, law or regulation or files an answer admitting the material allegations of a petition filed against it in any such proceeding, consents to or acquiesces in the appointment of a trustee, receiver, or liquidator of it or of all or any substantial part of its assets or properties, or if it or its shareholders shall take any action looking to its dissolution or liquidation; or (e) within 60 days after the commencement of any proceedings against Lessee seeking reorganization, arrangement, readjustment, liquidation, dissolution or similar relief under any present or future statute, law or regulation, such proceedings shall not have been dismissed, or if within 60 days after the appointment without Lessee's consent or acquiescence of any trustee, receiver or liquidator of it or of all or any substantial part of its assets and properties, such appointment shall not be vacated.

Upon the occurrence of an event of default, Lessor at its option, may do any or all of the following: (a) declare all sums payable hereunder immediately due and payable ("accelerate") and Lessor shall be entitled to recover immediately as liquidated damages for loss of a bargain and not as a penalty, an amount equal to all rentals and other sums due hereunder to the date of acceleration including late charges, plus all monies due or to become due during the remaining term of this Lease discounted to present value using a rate of five (5%) percent annum and computed pursuant to a generally accepted actuarial method, plus any sum which Lessor may require Lessee to pay or which Lessee may have agreed to pay for the Equipment upon termination of this Lease under any Purchase Agreement or otherwise, plus expenses paid or incurred by Lessor in connection with repossession, holding, repair, refurbishing, sales, lease or other disposition of the Equipment; (b) proceed by appropriate court action or other proceedings, at law or equity, to enforce performance by the Lessee of the covenants of this Lease and to recover damages for the breach thereof; (c) require Lessee to delivery the Equipment forthwith to Lessor at the Lessee's expense at such place as Lessor may designate; and (d) Lessor and/or its agent may, without notice or liability or legal process, enter into any premises of or under the control or jurisdiction of Lessee where the Equipment may be or by the Lessor is believed to be, and repossess all or any item thereof, disconnecting and separating all thereof from any other property and using all force necessary and permitted by applicable law, Lessee hereby expressly waiving all future right to possession of the Equipment and all other claims for injuries suffered through or loss caused by such repossession. Should any action or proceedings be instituted by Lessor for monies due to Lessor hereunder and/or for possession of the Equipment for any other relief, Lessee shall be liable for Lessor's reasonable attorneys' fees. The rights afforded Lessor hereunder shall not be deemed to be exclusive, but shall be in addition to any rights or remedies provided by law.

If any court of competent jurisdiction determines that any provision of this paragraph 10 is invalid or unenforceable, such determination shall not prohibit Lessor from enforcing its rights and establishing its damages in any action or proceeding in which Lessor seeks to enforce its rights and recover such damages, in accordance with the laws of such jurisdiction.

11. **ADDITIONAL SECURITY:** As additional security for the Lessee's obligations under this Lease, Lessee hereby grants to Lessor a security interest in all machinery and equipment covered by any other lease, security agreement or conditional sales contract (collectively "agreement") between the Lessee and Lessor whether such agreement is now in existence or may hereafter come into existence and Lessee hereby assigns to Lessor all of its right, title and interest in and to any surplus money to which Lessee may be entitled upon the sale of any machinery and equipment covered by such agreement. Conversely, the Lessee hereby assigns to Lessor all of its right, title and interest, and grants Lessor a security interest, in any surplus money to which it may be entitled on a foreclosure and sale of the Equipment covered by this Lease to the extent that at the time Lessee is indebted to Lessor for any deficiency resulting from a foreclosure and sale of any equipment covered by any other agreement between Lessor and the Lessee. Anything above to the contrary notwithstanding, the benefit of the foregoing cross-collateral provision shall apply to Lessor and its assignee holding this Lease only to the extent that Lessor or such assignee is also the holder of such other agreement(s).

12. **ASSIGNMENT:** Lessor may assign, pledge, grant a security interest in or otherwise transfer this Lease in whole or in part and all of Lessor's right, title and interest hereunder and in the Equipment, including the right to receive rentals and all other amounts payable hereunder. In the event of any such assignment, the right of the assignee to receive rentals and other amounts payable hereunder, as well as any other right of the assignee, shall not be subject to any defense, set-off or counterclaim which Lessee may have against Lessor. On receipt of notice of such assignment, Lessee shall promptly acknowledge its obligations hereunder to the assignee and shall comply with the written directions or demands of such assignee and shall make all rental and other payments due hereunder as such assignee may direct in writing. Following any such assignment, the term "Lessor" shall be deemed to include or refer to Lessor's assignee, but no such assignee shall be deemed to assume any obligations or duty imposed upon Lessor hereunder and Lessee shall look only to Lessor for performance thereof. Notwithstanding the foregoing, any such assignment shall be subject to Lessee's rights to possess and use the Equipment so long as no event of default shall have occurred and be continuing.

13. **GENERAL PROVISIONS:** So long as Lessee is not in default, Lessee shall peacefully and quietly hold the Equipment during the term hereof. Upon receipt of the Equipment, Lessee shall, at Lessor's request, execute and deliver Lessor's standard Delivery Certificate to Lessor. Lessor shall have the right, upon reasonable prior notice and during Lessee's regular business hours, to inspect the Equipment at the premises where located. Lessee will pay late charges in an amount equal to the lower of two percent (2%) per month or the maximum rate of interest permitted by applicable law on all delinquent installments of rent or other unpaid amounts from the due date thereof until paid. All notices required or permitted to be given hereunder shall be in writing and shall be deemed to have been given when mailed, postage prepaid, addressed to Lessor or Lessee at their respective addresses set forth herein, or to such other address(es) as either party shall hereafter furnish to the other in writing. Lessee waives any right to a jury trial in any action on this Lease. Lessee will furnish to Lessor, within 90 days after the close of its fiscal year, its year-end consolidated Balance Sheet and Profit and Loss Statement prepared by Lessee's certified public accountants, and Lessee will promptly furnish to Lessor within 30 days after the end of its second quarter in each of its fiscal years copies of its semi-annual unaudited financial statement. Any provision of this Lease which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof. The provisions of this Lease shall be binding upon and inure to the benefit of, the heirs, executors, administrators, successors, and (subject to the restrictions of paragraph 8 hereof) assigns of Lessee, and the assigns and successors of Lessor. This Lease constitutes the entire agreement between the parties with respect to the subject matter hereof. No term or provision of the Lease may be changed, amended or terminated except by a writing signed by both parties. No express or implied waiver by Lessor of any default by Lessee shall in any way be, or be construed as, a waiver of any future or subsequent default by Lessee. Time is of the essence as to Lessee's obligations under this Lease and shall not be affected by the acceptance of any overdue payment. The paragraph headings are for convenience only and not a part of this Lease. This Lease shall be governed by and construed in accordance with the laws of the State of New Jersey. It shall not be binding on Lessor until accepted and executed on behalf of Lessor at its Hackensack, New Jersey office.

EXHIBIT "C" Page 1 of 2

# PURCHASE AGREEMENT

AGREEMENT between BIG3D, 1419 M Street, Fresno, California 93721(the "Lessee") and GREAT ATLANTIC CAPITAL CORPORATION ("GACC") (the "Lessor")

WITNESSETH:

WHEREAS, the parties hereto are parties to an Equipment Lease dated _____, 2006 having No.: 998 ("The Lease"), consisting of One (1) new Man Roland 500 Series High Speed Six (6) Color LV 6/0 Sheetfed Offset Printing Press with Coater, S/N_____; One (1) new Air Motion Systems UV Combination System consisting of 6 interchangeable UV interstations each with 400 W/inch specific UV power, 2 interchangeable UV end of press modules each with 400 W/inch specific UV power, 1 water refrigeration unit (Chiller) with remote condenser, PC based control running with color touch screen operator interface, Cool Impressions system for heat sensitive substrates;

all as described in the Lease (the "Equipment"), and the Lessee is desirous of purchasing the Equipment at the expiration of the term of the Lease.

NOW, THEREFORE, it is agreed as follows:

1. Upon the expiration of the term of the Lease, the Lessee hereby irrevocably agrees to purchase the Equipment upon demand by GACC or its successors and assigns, at the price of $500.00 (the "Purchase Price").

2. The Purchase Price together with any sales taxes or similar taxes payable as a result of this sale shall be paid by the Lessee to GACC or its assigns at its office by cash or certified check within ten (10) days after the expiration of the term of the Lease. Upon payment of the Purchase Price the Equipment shall be sold to the Lessee and possession made available to it as-is, where is without representation or warranties.

3. A default by the Lessee under the Lease shall constitute a default by the Lessee under this agreement and the Lessee shall thereupon pay the Purchase Price to GACC, as liquidated damages and not by way of penalty. The foregoing shall be in addition to and not by way of limitation of GACC's right to recover all sums due to it under the Lease and to exercise all of its rights and remedies provided for in the Lease.

4. This agreement shall be binding upon and enure to the benefit of, and may be enforced by the parties, their successors and assigns.

IT WITNESS WHEREOF, the parties have executed this Agreement as of the day of _____, 2006.

GREAT ATLANTIC CAPITAL CORPORATION

By:_____

Title:_____

BIG3D

By: _/s/ Thomas K Saville_____

Title: _President_____